**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SHEILA B. FOX,**

                                        **Plaintiff,**              **6:05-CV-1599**
          **vs.**                                                   **(NAM/DRH)**

**MICHAEL J. ASTRUE*,**
**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

Office of Peter W. Antonowicz                  Peter W. Antonowicz, Esq.
1300 Floyd Avenue
Rome, New York 13440-4600
Attorney for Plaintiff

Glenn T. Suddaby                               William H. Pease
United States Attorney for the                 Assistant United States Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
Attorney for Defendant

          ** On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the
          Social Security Administration.  Pursuant to Federal Rule of Civil Procedure
          25(d)(1), he is automatically substituted for former Commissioner Joanne B.
          Barnhart as the defendant in this action.

**Norman A. Mordue, Chief U.S. District Judge:**

                    **MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

          Plaintiff Sheila Fox brings the above-captioned action pursuant to 42 U.S.C. § 405(g) of

the Social Security Act, seeking review of the Commissioner of Social Security's decision to

deny her application for social security disability benefits.  Presently before the Court are the

parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## II.  FACTUAL BACKGROUND

Plaintiff was born on August 10, 1968, and was 36 years old at the time of the administrative hearing on April 8, 2005. (Administrative Transcript at p. 23).[1]  Plaintiff is married and lives with her husband and two daughters, ages 14 and 16.  (T. 63, 78).   Plaintiff attended school through the 10th grade.  (T. 253).  From 1998 until April 2004, plaintiff was employed at Bethany House Nursing Home as a housekeeper.[2] (T.254).  Plaintiff's job duties included cleaning resident rooms, mopping floors, dusting, moving furniture and getting supplies. (T. 72).  Prior to working at Bethany House, plaintiff was employed as a laundry attendant at a laundry facility and a unit helper at a nursing home. (T. 89).

Plaintiff alleges that she sustained an injury to her back on June 13, 2003 while she was working at Bethany House.[3]  (T. 254).  Plaintiff claims that she injured her back lifting a mop and bucket. (T. 256).   Plaintiff had a similar accident and subsequent treatment for low back pain in 2000.  (T. 181).   Plaintiff was allegedly asymptomatic until 2002 when she again experienced pain after "getting up from a seated position".  (T. 181).  Plaintiff treated for low back pain until April 2003 and then did not treat again until the incident in June 2003.  (T. 181).  Plaintiff has not

---

[1]  Portions of the administrative transcript, Dkt. No. 6, will be cited herein as "(T.__)."

[2]  There are inconsistencies in the record with respect to plaintiff's employment.  During the hearing, plaintiff testified that she was employed from 1998 until 2003 at Bethany House. (T. 255).  However, in plaintiff's Disability Report, she indicated that she was employed from 1994 or 1998 until 2004 at the nursing home. (T. 72, 89).

[3]  There are inconsistencies in the record with respect to the date of plaintiff's injury.  During the hearing, plaintiff testified that the last time she worked and became disabled was June 13, 2003. (T. 254).  The ALJ's decision indicates that plaintiff became disabled on June 14, 2003. (T. 23).

worked since the date of the most recent incident and claims she is disabled due to a back problem. (T. 23).

**A**.    **Plaintiff's Medical Treatment Prior to June 2003**

On November 11, 2002, plaintiff was examined by FNP Jean Gaetano.[4] (T. 113). FNP Gaetano noted that plaintiff complained of back pain which began the week prior to the visit. (T. 113). FNP Gaetano indicated that plaintiff exhibited a full range of motion but had difficulty with her left leg when she attempted to get on the table. (T. 113). FNP Gaetano remarked that the examination was "somewhat inconsistent" because, upon examination, the left leg was stronger. (T. 113). FNP Gaetano diagnosed plaintiff with low back pain and provided injections of Toradol and Norflex.[5] (T. 113). FNP Gaetano excused plaintiff from work until November 18th and prescribed Norflex and Bextra[6]. (T. 113). On November 12, 2002, x-rays were taken of plaintiff's lumbar spine which did not reveal any evidence of fracture or subluxation. (T. 112).

FNP Pamela Slagle examined plaintiff on November 26, 2002. (T. 118). Plaintiff advised FNP Slagle that she was back to work as an aide at a "DDSO home". (T. 118). FNP Slagle noted that plaintiff had a full range of motion, no limp, and no tenderness to palpation in her lower back. (T. 118). Plaintiff requested and was given a referral to seek treatment with an orthopedist. (T. 118).

---

[4] Although FNP Gaetano's records indicated that plaintiff was a "patient of Dr. Slagle", the November 11, 2002 examination is the first record of treatment for the alleged disabling condition. (T. 113).

[5] Toradol is an anti-inflammatory used for short term management of pain. *Dorland's Illustrated Medical Dictionary* 998,1966 (31st ed. 2007). Norflex is a muscle relaxant used for acute spasms in voluntary muscles. *Id*. at 1309, 1358.

[6] Bextra is an anti-inflammatory used for symptomatic treatment of osteoarthritis or rheumatoid arthritis. *Dorland's* at 215, 2048.

3

On December 12, 2002, plaintiff underwent an MRI of her lumbar spine at Mohawk MRI. (T. 119).  The clinical diagnosis from the study is noted as "herniated discs". (T. 119).  The films allegedly revealed a small protrusion at L3-L4 without stenosis or impingement; moderate protrusion at L4-L5 with encroachment at L5 bilaterally; and a moderate disc protrusion at L5-S1 without stenosis or impingement. (T. 120).

On February 27, 2003, plaintiff began treating with Ivan Gowan, M.D., an orthopedist. (T. 188).  Dr. Gowan noted that plaintiff complained of back pain and bi-lateral knee pain (greater on the right). (T. 189).   Plaintiff advised Dr. Gowan that the pain began in November 2002, when she "attempted to get up from a seated position". (T. 188).  Plaintiff claimed that she missed a week from work but had since returned. (T. 188).  Upon examination, Dr. Gowan noted that plaintiff performed a heel/toe walk without difficulty and touched her toes.  (T. 189).  Dr. Gowan remarked that plaintiff exhibited a full range of motion in her hips and knees but her back was tender and straight leg raising was positive. (T. 189).  Dr. Gowan noted some crepitus in her right knee with a full range of motion in both knees.[7] (T. 189).  Dr. Gowan diagnosed plaintiff with herniated discs at L4-L5 and L5-S1, spinal stenosis and patellofemoral chondromalacia (right worse than left).[8]  (T. 189).  Dr. Gowan prescribed physical therapy and Naprosyn.[9]  (T. 189).

On March 4, 2003, plaintiff had an initial consultation with Michael Foster, a physical therapist at Chestnut Commons Physical Therapy. (T. 133).  Foster recommended a course of therapy consisting of two or three times a week for four weeks to alleviate her low back pain. (T.

---

[7] Crepitus is a grating sensation caused by the rubbing together of surfaces of joints.  *Dorland's* at 437.

[8] Patellofemoral chondromalacia is pain in the anterior aspect of knee with flexion with a softening of articular cartilage. *Id.* at 358.

[9] Naprosyn is an anti-inflammatory used in the treatment of pain and inflammation.  *Dorland's* at 1251.

133-134).  Foster noted that plaintiff received therapy a total of five times and was discharged on

April 11, 2003 exhibiting a "full range of motion in her lumbar spine". (T. 128).

  On April 29, 2003, plaintiff returned to Dr. Gowan complaining of bi-lateral knee pain.

(T. 186).  Dr. Gowan provided another prescription for physical therapy. (T. 186).  On May 26,

2003, plaintiff returned to Michael Foster at Chestnut Commons for therapy for her knee pain. (T.

125).  Foster advised plaintiff to treat twice or three times a week for four weeks.  Plaintiff had

three therapy sessions and was discharged on June 12, 2003. (T. 122 - 125).  At that time, Foster

noted that she had no episodes of patellar subluxation or pain. (T. 122).

**B.**  **Plaintiff's Medical Treatment after June 2003**

  Plaintiff returned for treatment with Dr. Gowan on July 8, 2003.[10]  (T. 181).  Dr. Gowan

reported that plaintiff complained of an onset of low back pain after lifting a mop and bucket at

work on June 13, 2003.  (T. 181).  Upon examination, Dr. Gowan noted plaintiff was not in acute

distress but walked with a great deal of pain and had discomfort when performing a heel/toe walk.

(T. 182).  Dr. Gowan indicated that plaintiff could only do four toes raises on her left and twenty

on her right and that straight leg raising was positive. (T. 182).  Dr. Gowan diagnosed plaintiff

with recurrent low back pain secondary to herniated discs with left L5 radiating pain. (T. 182).

Dr. Gowan prescribed medication including Darvocet, Naprosyn and Flexeril[11] and physical

---

[10] On June 17, 2003 (three or four days after the alleged incident), Dr. Gowan issued a report and noted that plaintiff was not able to return work or athletic activity until further notice due to low back pain and herniated discs. (T. 184).  The notation does not state whether or not plaintiff was examined on that date.

[11] Darvocet is a mild narcotic analgesics prescribed for the relief of mild to moderate pain, with or without fever. *Dorland's Illustrated Medical Dictionary,* 479 (31st ed. 2007).  Flexeril is a skeletal muscle relaxant for relief of muscle spasms. *Id*. at 465, 725.

therapy.[12] (T. 183).

Plaintiff continued to treat with Dr. Gowan every six weeks from September 2003 until March 2004. (T. 169-179).  On September 4, 2003, plaintiff advised Dr. Gowan that she could not attend physical therapy because "compensation has not approved" her case.  (T. 177).  During the September 2003 visit, Dr. Gowan noted that plaintiff's leg pain had improved and that she sat without difficulty. (T. 178).  Dr. Gowan assessed her as "somewhat better" but also noted that physical therapy was the best way to alleviate her pain and get her back to work.  (T. 178).  On October 21, 2003, Dr. Gowan reported that plaintiff ambulated without a limp and was able to heel/toe walk and do 20 toe raises bi-laterally. (T. 175).  Dr. Gowan noted that plaintiff still had not received physical therapy and opined that due to "her failure to improve", plaintiff was a candidate for surgery.  (T. 175).

On November 10, 2003, plaintiff underwent a second MRI study of her lumbar spine at Cooperative Magnetic Imaging. (T. 135).  The report of the films noted herniations of varying sizes at L3-L4, L4-L5 and L5-S1. (T. 135).   On November 18, 2003, Dr. Gowan reviewed the results of the MRI with plaintiff and noted that she was still having difficulty sitting for long periods of time and walking more than 25 yards.  (T. 172).  Plaintiff complained to Dr. Gowan of intense pain radiating to her left leg. (T. 172).  Dr. Gowan noted that plaintiff required epidural injections and did not believe she could continue to work as a housekeeper.[13] (T. 172-173).  Plaintiff had two additional visits with Dr. Gowan in January and March 2004.  (T. 143, 168-

---

[12] There is no evidence that plaintiff received physical therapy from July 2003 until May 2004 for her low back pain.

[13] There is are no records indicating that plaintiff received epidural injections by Dr. Gowan or any other physician.

170).  During those visits, Dr. Gowan noted that plaintiff had positive straight leg raising, low

back tenderness and could not touch her toes.  (T. 146).  Dr. Gowan assessed plaintiff with disk

bulges "with constant pain, not improving".  (T. 143, 168-170).

On May 3, 2004, plaintiff underwent a laminectomy, hemilaminotomy and excision

performed by Dr. Gowan at Community Memorial Hospital.[14]  (T. 146-165).  During her post-

operative visit on May 13, 2004, Dr. Gowan noted that plaintiff was having bilateral leg pain but

that she was "neurologically intact". (T. 208).   In June and July 2004, plaintiff received six

therapy treatments at Bouton Physical Therapy for low back pain.  (T. 238-245).

Plaintiff treated with Dr. Gowan in June, July, August and November 2004.  (T. 211-225).

During that time, Dr. Gowan reported that plaintiff continued to complain of pain in her lower

back aggravated by prolonged walking or sustained positions.  (T. 211).  Dr. Gowan also noted

that plaintiff complained of left knee pain that began after she fell at a Compensation Hearing in

July. (T. 215-225).  Dr. Gowan indicated that plaintiff's range of motion was restricted, straight

leg raising was positive and her low back was tender.  (T. 211).  Dr. Gowan stated that plaintiff

discontinued physical therapy for her back as "worker's compensation would not pay".   (T. 218).

Dr. Gowan diagnosed plaintiff with chondromalacia (left greater than right) and opined that

plaintiff was "totally disabled" and prescribed Naprosyn.  (T. 213, 215-225).  At the August 2004

visit, Dr. Gowan injected plaintiff's left knee with Marcaine and Dexamethasone.[15] (T. 215).

On October 8, 2004, Dr. Gowan completed a Medical Source Statement.  (T. 203-206).

Dr. Gowan opined that plaintiff could:  occasionally lift/carry less than 10 pounds; stand and/or

---

[14] Plaintiff's surgery consisted of an excision of the vertebra. *Dorland's* at 1017.

[15] Marcaine is used as a local anesthetic for infiltration, peripheral nerve block and epidural anesthesia. *Dorland's* at 265, 1121.  Dexamethasone is used topically on the skin as an anti-inflammatory. *Id*. at 511.

walk less than 2 hours in an 8 hour workday; and sit less than 6 hours in an 8 hour workday.  (T. 203-204).  Dr. Gowan noted that plaintiff's ability to push and pull was limited in her lower extremities. (T. 204).   Dr. Gowan qualified his statements noting that plaintiff could, on occasion, lift up to 5 pounds.  Dr. Gowan also stated that plaintiff would need to alternate between sitting and standing every 30 minutes.  (T. 204).

On November 2, 2004, Dr. Gowan noted that plaintiff was unable to touch her toes or bend to her knees and her straight leg raising was positive producing pain in her lower back. (T. 224).  Dr. Gowan reported that plaintiff complained of no significant leg pain but that her back was still "quite stiff" and that she was "slowly improving". (T. 224).  Plaintiff returned to Dr. Gowan on January 4, 2005 complaining of knee and back  pain.  (T.226 - 236).   Dr. Gowan noted that her back was still giving her problems and that she had not had much improvement with that condition. (T. 226).  Plaintiff underwent surgery at Community Memorial Hospital consisting of arthroscopy and chondroplasty to her left knee.[16]  (T. 232). Plaintiff's last visit with Dr. Gowan was on January 27, 2005.  (T. 236).  Dr. Gowan noted plaintiff was "doing quite well" and gave her another prescription for physical therapy. (T. 236).

In January 2005, plaintiff returned to Bouton Physical Therapy after surgery to her left knee. (T.248-249).  The therapist recommended that plaintiff receive therapy three times a week for four weeks. (T. 245-247).  The records indicate that plaintiff attended three sessions in February 2005 for her knee pain. (T. 245-247).

## C.      Consultative Examinations

On October 20, 2003 and February 6, 2004, Daniel Carr, M.D., an orthopedist, examined

---

[16] Plaintiff's surgery consisted of an examination of the knee with an arthroscope and repair of lacerated or displaced cartilage. *Dorland's* at 359.

plaintiff at the request of the Worker's Compensation insurance carrier.[17] (T. 136-142).  Plaintiff stated to Dr. Carr that she was injured while lifting a mop and pail at work. (T. 139-142). Plaintiff advised Dr. Carr that she went to the Emergency Room after her accident.[18] (T. 139). Upon examination, Dr. Carr noted a decrease in flexion due to pain but normal extension, deviation and rotation. (T. 140).  Dr. Carr indicated that plaintiff exhibited no motor deficit in her lower extremities, no spasms and positive straight leg raising with low back pain. (T. 140).  Dr. Carr diagnosed plaintiff with multi-level degenerative disc disease with herniations and stenosis. (T. 141).  Dr. Carr opined that plaintiff could work if she did not lift 20 pounds and frequently changed positions.[19] (T. 142).

On February 6, 2004, plaintiff was re-examined by Dr. Carr. (T. 136).  Dr. Carr noted that she had epidural shots for her low back pain with no improvement. (T. 136).  Plaintiff advised Dr. Carr that she did not have any appointments scheduled with any physicians at that time. (T. 136). Dr. Carr reported that plaintiff's current treatment consisted of Flexeril, limiting her activities and a home exercise program. (T. 136).  Dr. Carr diagnosed plaintiff with non-specific low back pain and multi-level lumbar disc disease. (T. 137).

On June 18, 2004, plaintiff was examined by Kalyani Ganesh, M.D., an orthopedist, at the request of the agency.  (T. 192).  Plaintiff advised Dr. Ganesh that she was able to cook, shop, shower and dress without assistance. (T. 193).  During the examination, Dr. Ganesh noted that

---

[17] Both examinations were held prior to plaintiff's back surgery.

[18] The record does not contain any emergency room records for any date.  Further, plaintiff claimed she went to the emergency room to "get a shot" because she had previously received a "shot" for her back at an Urgent Care facility six months prior. (T. 139).  There are no reports from any Urgent Care facility in the record.

[19] Dr. Carr's report indicates that an "addendum" to the October 2003 report was prepared on December 4, 2003.  The record does not contain a copy of that report. (T. 136).

plaintiff had a normal gait, was able to heel-toe walk without difficulty, could not squat and wore a back brace. (T. 193).  Dr. Ganesh noted that plaintiff exhibited limited range of motion, however she had no trigger points and no spasms and did not need help changing for the examination or climbing on or off the table. (T. 193)  Dr. Ganesh diagnosed plaintiff with chronic low back pain and bilateral knee pain (with significant crepitus in both knees). (T. 194).  Dr. Ganesh's report included a "Medical Source Statement" with his opinion that plaintiff had no gross limitation to sitting or using her upper extremities. (T. 194).  Dr. Ganesh further opined that plaintiff had a moderate degree of limitation to walking, climbing, bending, lifting, carrying, pushing and pulling and that plaintiff's prognosis was fair to guarded. (T. 194).

The record also contains a Physical Residual Functional Capacity ("RFC") Assessment dated July 6, 2004 completed by Karla Miller, a non-physician disability analyst. (T. 196-202). Miller considered the opinions of Drs. Carr, Gowan and Ganesh and concluded that plaintiff could occasionally and frequently lift and carry 20 pounds.  Further, Miller stated that plaintiff could stand, walk and sit for 6 hours of an 8 hour workday with no other exertional limitations. (T. 197-198).  Miller found that plaintiff was partially credible and noted that plaintiff could perform household chores, shop, cook and walk for 20 minutes. (T. 199-200).

## III.    PROCEDURAL HISTORY

Plaintiff filed an application for Social Security disability insurance benefits ("DIB") on April 6, 2004.  (T. 63-67).  The application was denied on July 15, 2004.  (T. 33-36).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on April 8, 2005. (T. 250).  On June 17, 2005, ALJ Larry Banks issued a decision denying plaintiff's claim for disability benefits.  (T. 22-31).  The Appeals Council denied plaintiff's request for review,

making the ALJ's decision the final determination of the Commissioner on November 30, 2005.

(T. 4).  This action followed.

## IV.    ADMINISTRATIVE LAW JUDGE'S DECISION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

In this case, the ALJ found at step one that plaintiff has not engaged in gainful activity since the filing date of her application. (T. 23).  At step two, the ALJ concluded that plaintiff was status post lumbar spine surgery and suffered from lumbar disc disease and bilateral knee chondromalacia which qualified as a "severe impairment" within the meaning of the Social Security Regulations (the "Regulations").  (T. 26).  At the third step of the analysis, the ALJ determined that plaintiff's impairments did not meet or equal the severity of any impairment

listed in Appendix 1 of the Regulations.  (T. 26).  The ALJ found that plaintiff had the residual functional capacity ("RFC"):

> to  lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; never climb ladders, ropes or scaffolds; and occasionally perform other postural movements.  Claimant also requires a sit/stand option where she is able to alternate positions every 15 to 20 minutes due to residual effects of back surgery.

> Accordingly, the undersigned finds the claimant retains the following residual functional capacity: sedentary work that requires no climbing of ropes, ladders, or scaffolds and no more than the ability to perform other postural movements, such as stooping, on an occasional basis.  (T. 28).

Therefore, at step four, the ALJ concluded that plaintiff was unable to perform all of her past relevant work. (T. 28).  Since plaintiff claims that she suffers from exertional and non-exertional limitations, the ALJ obtained the testimony of a vocational expert to determine whether there were jobs plaintiff could perform.   Based upon the vocational expert's testimony, the ALJ concluded at step five, that there are a significant number of jobs in the national economy that plaintiff could perform, such as work as an order clerk, loader-semi conductor or ticket checker. (T. 29).   Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act.  (T. 29).

## V.      DISCUSSION

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).  Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Plaintiff argues that:  (1) the RFC determination by the ALJ is not supported by substantial evidence; (2) the ALJ erred in evaluating plaintiff's credibility; and (3) the hypothetical questions posed to the vocational expert are not supported by evidence.  (Dkt. No. 10).

## A.      Residual Functional Capacity

The ALJ found that plaintiff retained the residual functional capacity to perform sedentary work with certain restrictions.  (T. 28).   Plaintiff challenges this determination arguing that the ALJ ignored the opinions of plaintiff's treating physician, Dr. Gowan.  Plaintiff further asserts that the ALJ improperly relied upon the opinions of Dr. Ganesh and the Physical RFC Assessment of Karla Miller, a non-examining consultant. (Dkt. No. 10, p. 10-12)  Plaintiff also contends that the ALJ failed to adequately address the issue of plaintiff's obesity and the effect on her functional limitations. (Dkt. No. 10, p.17).

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).   In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545(a).  Evidence that a plaintiff is capable of participating in various

activities of daily living despite allegations of severe pain can support a determination that a plaintiff can perform sedentary work.  *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980).

In this case, the ALJ found that plaintiff had the residual functional capacity ("RFC"):

> to  lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; never climb ladders, ropes or scaffolds; and occasionally perform other postural movements.  Claimant also requires a sit/stand option where she is able to alternate positions every 15 to 20 minutes due to residual effects of back surgery.
>
> Accordingly, the undersigned finds the claimant retains the following residual functional capacity: sedentary work that requires no climbing of ropes, ladders, or scaffolds and no more than the ability to perform other postural movements, such as stooping, on an occasional basis.  (T. 28).

### 1.      Treating Physician Rule

Plaintiff argues that the ALJ erred in assessing plaintiff's RFC as he improperly rejected the opinions of her treating physician, Dr. Gowan.  (Dkt. No. 10, pp. 9-17).  Defendant asserts that the ALJ properly evaluated Dr. Gowan's opinions under the Regulations and gave appropriate reasons for the weight afforded to those opinions. (Dkt. No. 12, p. 16).

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2) (2001); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).  The opinion of a treating physician on the subject of medical disability is: (1) binding on the fact-finder unless contradicted by substantial evidence; and (2) entitled to some extra weight, even if contradicted by substantial evidence, because the

treating source is inherently more familiar with a claimant's medical condition. *Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir. 1990) (internal quotations and citation omitted).

Even when evidence is provided by different medical experts, the treating medical expert is "entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians". *Morales v. Bowen*, 664 F.Supp 75, 78 (S.D.N.Y. 1987) (citing *Schisler v. Heckler*, 787 F.2d 76, 81-85 (2d Cir. 1986). A treating physician's failure to include objective support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case. *Rosa*, 168 F.3d at 80 (internal quotations omitted); *Schisler*, 787 F.2d at 82 (treating physicians testimony is presumptively reliable enough in and of itself that it need not be supported by objective or clinical evidence).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (I) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. 404.1527(d)(2). Additionally, the regulations direct the Commissioner to "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion". *Id.*; accord 20 C.F.R. 416.927(d)(2).

In this case, the ALJ assigned "little weight" to the opinions of Dr. Gowan. (T. 27). Specifically, the ALJ determined that Dr. Gowan's opinions are "not supported by objective

medical evidence or his own records of treatment". (T. 27).   After reviewing the Administrative Transcript, the Court finds that the record lacks substantial evidence to support the ALJ's conclusions.  Dr. Gowan is properly regarded as one of plaintiff's treating physicians, thus the ALJ erred by not assigning his opinion controlling or at least greater weight.  Under the Regulations, the ALJ was required to give some weight to Dr. Gowan's conclusions, even if they were not given controlling weight in view of other medical evidence in the record.  *See Schisler*, 3 F.3d at 567.  The ALJ failed to do so.

Dr. Gowan was plaintiff's only treating physician and the bulk of the record in this case consists of Dr. Gowan's medical assessments.  Dr. Gowan routinely observed and treated plaintiff during at least a two-year period and made extensive clinical findings that were based on observations more linked to plaintiff's daily activities than any other physician or consultant.  *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (holding ALJ should have given controlling or at least greater weight to opinion of physician who had treated plaintiff for seven years, "made medical observations far more extensive than those of any other consulting physician", and where there was "no indication that [his] observations were unsupported by medical evidence").   Dr. Gowan's observations and opinions are consistent with the medical evidence and record as a whole including the results of two MRI studies which provide objective support for the opinions and conclusions drawn by Dr. Gowan. (T. 119-120, 135).

The ALJ concluded that Dr. Gowan's Medical Source Statement is entitled to "little weight" as it does not "reflect claimant's current situation". (T. 27).  This reasoning is flawed and clearly unsupported by substantial evidence.  The ALJ specifically rejected Dr. Gowan's opinion as not indicative of plaintiff's current medical condition, however, the ALJ then inexplicably

assigned "great weight" to the assessment of the state agency medical consultant, Karla Miller, even though Miller's assessment pre-dates Dr. Gowan's opinion.[20]

The ALJ further discredited the Medical Source Statement of Dr. Gowan concluding that it was "not supported by Dr. Gowan's own records". The ALJ stated that "there is nothing in his treatment records that suggests claimant's back condition worsened after surgery or [Dr. Gowan's] May 13, 2004 report of claimant's abilities". (T. 27). To the contrary, the record shows that after plaintiff's surgery, Dr. Gowan continually took note of plaintiff's back complaints including the fact that her pain was aggravated with walking and sitting for prolonged periods of time. (T. 211, 226). During plaintiff's examinations in June, July and August 2004, Dr. Gowan noted that plaintiff was still unable to touch her toes and could only reach forward to her knees. (T. 224). Plaintiff's straight leg raising was still positive and Dr. Gowan noted that she had not made much improvement and she seemed to be "plateauing". (T. 226). In November 2004, one month after completing the Medical Source Statement, Dr. Gowan noted that plaintiff was slowly improving but that he "may not know for a full year from the time of surgery whether she would completely recover". (T. 225). Moreover, plaintiff continued to complain of back pain to Dr. Gowan in January 2005, only three months before the Administrative Hearing. (T. 226-236).

The recent reports are far more relevant to the determination of disability than the May 2004 reports. *See Tavarez v. Barnhart*, 124 Fed.Appx. 48, 49 (2d Cir. 2005) (holding that because the ALJ failed to weigh the treating physician's opinion reflected in recent reports and to give "good reasons" for declining to accord it controlling weight, his decision is neither supported by substantial evidence nor based on proper application of 20 C.F.R. § 416.927(d)(2)). Nothing

___

[20] The report of Karla Miller is dated July 6, 2004 and the medical source statement of Dr. Gowan is dated October 8, 2004.

in the record justifies an inference that Dr. Gowan changed his mind or that plaintiff's medical condition improved after he rendered his opinions. *See Morales*, 664 F.Supp at 79.

In this case, the ALJ failed to afford the proper weight to the opinions of plaintiff's treating physician, Dr. Gowan.   As discussed, the ALJ's reasons for reducing the weight, including plaintiff's "current situation" and "not supported by records", is not supported by substantial evidence.  Given the length of plaintiff's treatment relationship with Dr. Gowan, his opinions were entitled to greater weight than those of the examining physicians and consultant. *See Iannopollo v. Barnhart*, 280 F.Supp.2d 41, 48 (W.D.N.Y. 2003) (holding that it was legal error for the ALJ to treat the opinions of the examining physicians on par with treating physician's opinion).   By giving "little weight" to Dr. Gowan's opinions and by failing to provide "good reasons" for doing so, the ALJ committed legal error, and therefore, the decision of the Commissioner should be reversed.

In light of the consistency of Dr. Gowan's opinion with the other evidence in the record and his lengthy treatment relationship with respect to both of plaintiff's impairments, the Regulations require that Dr. Gowan's opinion be given controlling weight over that of the other examining physicians.  *See* 20 C.F.R. § 404.1527(d)(2); *Shaw*, 221 F.3d at 134; *Rosa*, 168 F.3d at 78-79; *Green-Younger*, 335 F.3d at 105.   To not do so is legal error, and requires that the case be reversed.  *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (holding that "we do not hesitate to remand" when the rejection of a treating physician opinion is not supported).

**2.    Consultative Examiners**

The ALJ "assign[ed] great weight to the opinion of the state agency medical consultant because it is consistent with the medical evidence as a whole and is not significantly altered by the subsequent knee surgery which was effective". (T. 27). Plaintiff argues that the ALJ improperly relied upon the opinions of Dr. Ganesh and the non-examining consultant, Karla Miller, in making his determination. (Dkt. No. 10, pp. 9-17). The Commissioner asserts that Dr. Ganesh and the medical consultant provided valid medical opinions that thus, the ALJ was entitled to consider those opinions and decide the amount of weight to accord.[21] (Dkt. No. 12, p. 14).

A non-examining source's opinion, including the opinions of state agency medical consultants and medical experts, will be given less weight than an examining source's opinion. 20 C.F.R. § 416.927(d)(1); *see also Pogozelski v. Barnhart*, 2004 WL 1146059, at *13 (E.D.N.Y. 2004) (opinions of non-examining sources entitled to even less weight than an examining consultative physician's opinion). An opinion, which is based solely on a single examination of plaintiff, deserves limited weight. *See Crespo v. Apfel*, 1999 WL 144483, at *7 (S.D.N.Y. 1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit of review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day."). Furthermore, "the opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence" to override the diagnosis of a treating physician. *Garzona v. Apfel*, 1998 WL 643645, at *1 (E.D.N.Y. 1998).

---

[21] Plaintiff argues that the ALJ assigned improper weight to the opinions of Dr. Ganesh, however the ALJ did not assign any specific weight to the opinions of Dr. Ganesh or Dr. Carr. Rather, the opinion only specifically refers and accords weight to the opinions of Karla Miller, the state agency medical consultant. (T. 27).

In this case, it is clear that the ALJ should not have given the state agency medical consultant's opinion more than limited weight.   The ALJ should have considered that Dr. Ganesh examined plaintiff only once at the request of the agency and further, that the state agency consultant, Miller, never examined plaintiff. (T. 196).  As such, the assessments of Dr. Ganesh and Miller should not have been considered "substantial evidence."  *See Spielberg v. Barnhart*, 367 F.Supp.2d 276, 282-283 (E.D.N.Y. 2005) (concluding that the ALJ failed to accord proper weight to the reports of the treating psychologist and social worker, who had the opportunity to examine and treat plaintiff over an extended period of time-not just over the course of one morning).

Accordingly, the Court finds that the record lacks substantial evidence to support the ALJ's assessment of plaintiff's RFC.   Upon remand, the ALJ shall re-evaluate the medical opinions of plaintiff's treating physicians, examining physicians and non-examining consultants according to the Commissioner's Regulations.

### 3.    Obesity

Plaintiff argues that the ALJ failed to provide a thorough evaluation of the effects of plaintiff's obesity. (Dkt. No. 10, p. 17).  The Commissioner asserts that the ALJ properly evaluated plaintiff's obesity pursuant to Social Security Ruling ("SSR") 02-1p. (Dkt. No. 12, p. 13).

Obesity is not in and of itself a disability.  *See* Social Security Ruling ("SSR") 02-1p, 2002 WL 31026506 (S.S.A. Sept. 12, 2002).  An ALJ should consider whether obesity, in combination with other impairments, prevents a claimant from working. *Id*. "SSR 02-1p requires

the ALJ to consider the effects of obesity on an individual's health at all steps in the sequential evaluation process, but does not automatically require an ALJ to find an obese claimant disabled because of his or her obesity ."  *Howe-Andrews v. Astrue*, 2007 WL 1839891, at *7-9 (E.D.N.Y. 2007).   There is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases.  *Cruz v. Barnhart*,  2006 WL 1228581, at *9-10

(S.D.N.Y. 2006).

In this case, the ALJ specifically addressed plaintiff's obesity in an entire paragraph in the decision. (T. 26).  The ALJ found that "even considering the effect of obesity that exacerbates physical problems, none of claimant's impairments are severe enough to meet or medically equal listing criteria". (T. 26).  The ALJ found that records from plaintiff's physical therapist demonstrated that she was able to ambulate and perform fine and gross motor movements. (T. 26).  These references are sufficient to demonstrate that the ALJ considered and sufficiently addressed the plaintiff's obesity in the decision.

In addition, the record indicates that plaintiff was diagnosed as "moderately obese" as early as November 2002.  (T. 118).  At the time of that diagnosis, plaintiff was working. (T. 118). Therefore, the ALJ properly found that plaintiff's obesity was not severe enough to meet or equal a listed impairment.  *See Howe-Andrews v. Astrue*, 2007 WL 1839891, at *7-9 (E.D.N.Y. 2007) (concluding that the ALJ explicitly stated, "[c]onsideration was given to claimant's morbid obesity," finding no evidence her weight was limiting since she worked with the same weight).

## B.    Plaintiff's Complaints of Pain

Regarding plaintiff's credibility, the ALJ found: "the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision". (T. 30).

Plaintiff argues that the ALJ applied the incorrect legal standard in evaluating the credibility of her complaints of pain. (Dkt. No. 10, p. 19).  The Commissioner asserts that the ALJ properly found that plaintiff's alleged symptoms were not credible based upon inconsistencies in plaintiff's statements and the lack of support by objective medical evidence. (Dkt. No. 12, p. 21).

When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]"  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption."  *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)).  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(I)-(vi), 416.929(c)(3)(I)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence.  *See* Social Security Ruling 96-7p, 1996 WL 374186, at *2.

The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus*, 615 F.2d at 27; *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility). When rejecting subjective complaints of pain, an ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief[.]" *Brandon v. Bowen*, 666 F. Supp 604, 608 (S.D.N.Y. 1987). If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Secretary, Dept. of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). A reviewing court's role is merely to determine whether substantial evidence supports the ALJ's decision to discount a claimant's subjective complaints. *Aponte*, 728 F.2d at 591 (quotations and other citations omitted).

When making his assessment of plaintiff's credibility, if the ALJ perceived that her testimony contradicted her prior statements, then "the interests of fairness and accuracy both should have led him to ask her about the perceived inconsistency, rather than simply snap the trap closed in his written decision." *Matejka v. Barnhart*, 386 F.Supp.2d 198, 206 (holding that ALJ erred in failing to ask plaintiff about perceived inconsistencies between her testimony and statements in a form for the New York State Office of Temporary and Disability Assistance); *see also Fernandez v. Apfel*, 2000 WL 271967, at *8 (E.D.N.Y. 2000) (holding that ALJ should have questioned plaintiff at her hearing regarding alleged contradictions between answers on her disability application and testimony one year later).

In this case, the ALJ's decision referred to a form completed by plaintiff on May 7, 2004 for the New York State Office of Temporary Disability Assistance regarding her daily activities:

> Claimant testified that she can lift 10 pounds, but it bothers her back, sit at a desk for 5 minutes, and stand without leaning for 4 or 5 minutes.  On the other hand, she reported that she did light duty housework and cared for her husband and children, was able to care for her personal hygiene independently, and prepared simple meals daily.  She also went outside everyday and traveled by walking or riding in a car.  The reason she gave for no longer going camping was that they did not have enough money...". (T. 27).

The ALJ also cited to plaintiff's testimony during the April 8, 2005 administrative hearing:

> Claimant testified that she . . . has a problem walking or standing. She testified her knees are weak and have been since surgery on her left knee in February 2005.  Claimant indicated she is able to sit 10 to 15 minutes and has pain, on a scale of 1 to 10, at a level 6 after medication.  She said she can lift 10 pounds, but it bothers her back, sit at a desk for 5 minutes, and stand without leaning for 4 to 5 minutes. (T. 25).

Based upon the above, the ALJ determined that:

> Based on the inconsistencies in claimant's statements and the lack of objective medical evidence supporting the extent of her alleged physical limitations, the Administrative Law Judge finds that her allegations are not entirely credible. (T. 27).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ did not apply the correct legal standard in assessing plaintiff's credibility.  To the extent that the ALJ found inconsistencies in plaintiff's statements to the NYS Disability Office and the testimony at the hearing, the ALJ should have sought an explanation from plaintiff. *See Garret v. Astrue*, 2007 WL 4232726, at *9 (W.D.N.Y. 2007).

While an ALJ may find all, only some, or none of a claimant's allegations to be credible, the ALJ must specify the weight given to the individual's statements and the reasons for that weight.  SSR 96-7p. 1996 WL 374186, at *4.  Here, the ALJ concluded that plaintiff was not totally credible, yet he failed to state what allegations were credible, the weight given to plaintiff's statements and the reasons for affording such weight.

Moreover, it is unclear from the record whether or not the ALJ properly considered the factors enumerated in 29 C.F.R. 404.1529(c)(3)(I)-(iv).  For example, the ALJ discussed the plaintiff's daily activities however, the decision does not contain any evaluation of the additional factors including plaintiff's medications, other measures taken to alleviate pain or other treatment.  Plaintiff received several prescriptions for pain medication and received various injections for her back and knee pain including in November 2002 and August 2004. (T. 113, 215).  Although the ALJ stated that plaintiff's pain was diminished after medication, he did not provide any further analysis of plaintiff's medications and failed to discuss the other measures taken by plaintiff to relieve her pain.  (T. 25).

Consequently, the Court is left with no basis upon which to determine whether the appropriate legal standards were applied, nor can it evaluate whether the ALJ considered the entire evidentiary record in arriving at his conclusion.  As a result, the Court remands this case for a determination of plaintiff's credibility which must contain specific findings based upon substantial evidence in a manner that enables effective review.

**C.    Vocational Testimony**

During the hearing, the ALJ posed a series of hypothetical questions to the vocational expert in order to ascertain whether there were any jobs plaintiff could perform despite her

limitations. (T. 266).   Plaintiff argues that the responses are unreliable because the ALJ failed to provide all of plaintiff's limitations in the presentation of hypotheticals to the vocational expert. (Dkt. No. 10, p. 12).  In response to the hypotheticals, the ALJ identified three possible jobs in the region where plaintiff  lives: order clerk; loader-semi conductor and ticket checker.  (T. 29).  Plaintiff argues that the hypotheticals posed to the vocational expert do not fully reflect the evidence. (Dkt. No. 10, p. ).  Defendant claims that the ALJ properly relied upon the responses to the hypotheticals and the medical-vocational guidelines to conclude there were jobs in the economy that plaintiff could perform. (Dkt. No. p. 19).

At the fifth step of the sequential evaluation of disability, the Commissioner bears the responsibility of proving that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's residual functional capacity, age, education, and past relevant work.  20 C.F.R. §§ 416.920, 416.960.  Ordinarily, the Commissioner meets his burden at this step "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)."  *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  Sole reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's limitations.  *Id*. at 606.  For example, use of the grids as the exclusive framework for making a disability determination may be precluded where, as here, plaintiff's physical limitations are combined with non-exertional impairments which further limit the range of work she can perform.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Bapp*, 802 F.2d at 603; *see also Melchior v. Apfel*, 15 F. Supp. 2d 215, 58 (N.D.N.Y. 1998) (stating

"where nonexertional limitations significantly diminish the ability to perform a full range of work, it is appropriate that the ALJ present testimony from a vocational expert").

A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *Bosmond v. Apfel*, 1998 WL 851508, at *8 (S.D.N.Y.1998) (citation omitted); *see also De Leon v. Secretary of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir.1984). If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. *Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y.1996).

The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform." *Lugo v. Chater*, 932 F. Supp. 497, 503 (S.D.N.Y. 1996). Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).

Here, the ALJ properly sought the testimony of a vocational expert because he determined that plaintiff suffered from non-exertional limitations. *See Bapp*, 802 F.2d at 606. However, as discussed above, because the ALJ improperly assessed plaintiff's RFC and credibility, the hypothetical proposed to the vocational expert was not supported by substantial evidence. Thus, the hypothetical does not accurately reflect all of the plaintiff's impairments,

limitations and restrictions. Thus, the ALJ erred in relying upon the vocational expert's

testimony.

## VI.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits is **REVERSED** and this matter

be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) to reassess the treating

physician opinions; reassess plaintiff's residual functional capacity; and to assess plaintiff's

credibility consistent with 20 C.F.R. 404.1529 and Social Security Ruling 96-7; and for further

proceedings consistent with this Order, and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral

to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such,

any appeal taken from this Order will be to the Court of Appeals for the Second Circuit, and it is

further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated: March 26, 2008
        Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge